UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**Russell VanBrocklen,**

**Plaintiff,**

**-v-**                                     **1:11-CV-604** (**NAM/RFT**)

**Town of Colonie and J. Ariedeel,**

**Defendants.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

Russell VanBrocklen
Plaintiff, *pro se*

D'Agostino, Krackeler, Maguire & Cardona, P.C
Randall J. Ezick, Esq., of counsel
16 Sage Estate
Sage Mansion
Menands, New York 12204

**Hon. Norman A. Mordue, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## INTRODUCTION

The amended complaint (Dkt. No. 11) asserts claims under 42 U.S.C. § 1983 ("section

1983), the Federal Constitution, the Americans with Disabilities Act ("ADA") (42 U.S.C. §

12132), and New York State common law.  The claims stem from an incident on January 9, 2011

in which plaintiff suffered a panic attack in the Albany International Airport.  According to the

amended complaint, defendant J. Ariedeel ("Ariedeel"), an Advanced Emergency Medical

Technician with the Town of Colonie Emergency Medical Services Department ("CEMS"),

directed that plaintiff be placed on a stretcher and transported to the Albany Medical Center

Hospital Emergency Department against his will, thereby infringing his rights under the Fourth

and Fourteenth Amendments of the United States Constitution and the ADA, and otherwise

causing him harm.

Defendants move (Dkt. No. 13) to dismiss the amended complaint.  Plaintiff moves (Dkt.

No. 17) for leave to submit additional information in opposition to the dismissal motion.

Plaintiff's motion is denied (Dkt. No. 17); defendants' motion (Dkt. No. 13) is granted; and all

claims are dismissed, some with prejudice and some without, as set forth below.

### AMENDED COMPLAINT

The amended complaint (Dkt. No. 11, pp.18, *et seq*.) includes the following:[1]

> 6. Defendant J. Ariedeel 789 AMET, # 085883, were all at all times relevant
> to the events mentioned herein an employee of Defendant Town of Colonie
> and was acting within the scope of their employment (the Town of Colonie)
> on January 9, 2011.
>
> Facts
>
> 7. The EMT report, on page one of two, from January 9, 2011, states that at
> approximately 12:28 the call was received. The Plaintiff accepts this statement
> as true.
>
> 8. The EMT report, on page one of two, from January 9, 2011, states that at
> approximately 12:28 EMT's where enroute. The Plaintiff accepts this
> statement as true.
>
> 9. The EMT report, on page one of two, from January 9, 2011, states that at
> approximately 12:36 EMT's where at the scene. The Plaintiff accepts this
> statement as true.
>
> 10. The EMT report, on page one of two, from January 9, 2011, states that at
> approximately 12:59 EMT's left the scene for Albany Medical Center. The
> Plaintiff accepts this statement as true.
>
> 11. The EMT report, on page one of two, from January 9, 2011, states that at

---

[1] The Court sets forth the amended complaint as it appears in the record, without noting or correcting errors.

approximately 1: 18 EMT's arrived at Albany Medical Center. The Plaintiff accepts this statement as true.

12. The EMT report, on page one of two, from January 9, 2011, states that "care in progress on arrival" the PD/FD/Other First responder was fill in. To be correct the Albany Airport EMT's stated in their report that "Pt found laying on found complaining severe pain in left hip area. Pt has paper work from Albany Medical College stating pt has a severe anxiety disorder and that the PT SHOULD NOT BE TOUCHED BECAUSE OF THIS DISORDER. Pt has no other complaints other than the pain to his hip. PT states when he applies pressure to the area usually the pain decreases but there is no relief today. PT vitals not taken due to pt anxiety. CEMS arrived at 12:38 Pt care to CEMS."

13. The EMT report, on page one of two, from January 9, 2011, states that at under "subject assessment" upon EMS arrival pt lying face down, semi clothed (the plaintiff was wearing a tea shirt and gym shorts) on floor of airport, surrounded by multiple sheriff deputies and airport fire personnel. Airport states pt has been on the floor for (approximately) 30 minutes". The Plaintiff accepts this statement as true.

14. Time to switch to the Airport Fire Personnel Report, page one of one.

15. The Airport Fire Personnel report, on page one of one, from January 9, 2011, states that, under "Chief Complaint" "Pain in left hip area". The Plaintiff accepts this statement as true.

16. The Airport Fire Personnel report, on page one of one, from January 9, 2011, states that, under "care in progress on arrival" "None" was marked. The Plaintiff accepts this statement as true.

17. The Airport Fire Personnel report, on page one of one, from January 9, 2011, states that, under "Subject Assessment." "Pt found laying on found complaining severe pain in left hip area. Pt has paper work from Albany Medical College stating pt has a severe anxiety disorder and that the PT SHOULD NOT BE TOUCHED BECAUSE OF THIS DISORDER. Pt has no other complaints other than the pain to his hip. PT states when he applies pressure to the area usually the pain decreases but there is no relief today. PT vitals not taken due to pt anxiety. CEMS arrived at 12:38 Pt care to CEMS." The Plaintiff accepts this statement as true.

18. The Airport Fire Personnel report, on page one of one, from January 9, 2011, states that, under "past medical history" "other (list)" is marked with "anxiety" hand written in. The Plaintiff accepts this statement as true.

19. The Airport Fire Personnel report, on page one of one, from January 9, 2011, states that, under "vital signs" "time" 12:30 is written.

20. Back to the EMT report, page one of two.

21. The fallowing report is listed under "objective physical assessment", "comments", and "narrative".

22. "Sheriff states pt initially walked to Southwest ticket counter then to security, their stated "grown pin" [presumably, "groin pain"], requested wheelchair, want to lower floor and laid on the floor." The Plaintiff accepts this statement as true. The Plaintiff could not find a place to get away from civilians, as instructed by Colonie Police Officer Whitelaw. The Plaintiff got away from as many civilians as he could, and fallowing Colonie Police Officer Whitelaw's instructions, laid face down on the floor. Officer Whitelaw's instructions to the Plaintiff was to lay face down on the floor until police/EMT's told the Plaintiff to do otherwise.

23. The Plaintiff laid on the floor, face down, because an Officer Whitelaw, responding to similar incidents in a public place, advised the Plaintiff to lay face down on the floor, away from civilians, so that the police would not think that the Plaintiff was a danger to himself or others. The Plaintiff's medical condition is so unusually that the police need time to read the Plaintiff's medical documentation, and interview the Plaintiff, before deciding whether to hand the Plaintiff his medical device (which the Plaintiff did not bring on 1/9/2011, because the police think the device could be used as a weapon.).

24. Back to the EMT report:

"State PT was semi clothed up arrival at security, in t-shirt, loose shorts only." The Plaintiff accepts this statement as true.

25. "State pt lying on the floor repeatedly stabbing himself with his keys, asking for a pen to stab himself with an apparent attempt to relieve "grain pain", The Plaintiff accepts this statement as true. The Plaintiff attempted to use his key's, other person effects, under the suggest from the Albany airport EMS personnel, before the Colonie EMT's arrived.

26. "Pt also presented Sheriff with multiple copies of statement documenting "severe anxiety manifested as testicular pain", see attached documents also state that pt has fear of "male medical professionals". The Plaintiff accepts this statement as true.

27. "Assess: pt lying prone on floor, yelling incoherently, loudly." The

Plaintiff accepts this statement as true.

28. "Hands under body? at groin area." The Plaintiff accepts this statement as true.

29. "Pt able to answer questions when asked." The Plaintiff accepts this statement as true.

30. "Airway patent, adequate breathing, no obvious bleeding." The Plaintiff accepts this statement as true.

31. "Pt very angry insists has "pelvic floor tightness" is stabbing self at "tension points." The Plaintiff compleatly disagrees that the Plaintiff was "very angry"; the Plaintiff was in a lot of pain, and trying to relieve the pain. The Plaintiff accepts the rest of the statement as true.

32. "Denis other medical complaints after short discussion, pt moved self to sitting upright position." The Plaintiff did this because the Plaintiff was order to do so by the EMT's. The Plaintiff accepts the rest of the statement as true.

33. "**Refused to get onto stretcher**." The Plaintiff accepts the rest of the statement as true.

34. "[R]olled to LBB, secured w' seatbelts and moved stretcher AMD." Please note that this was done against the Plaintiff's will, with the ad of male medical person, that caused the Plaintiff an extreme amount of additional pain, for an extended period of time, until the Plaintiff was allowed to use a better pressure point device at Albany Medical Center. Please note that due to advice from police officers well before this date, no matter how much pain that was inflicted on the Plaintiff, via the gross negligent order of Defendant J. Ariedeel, the Plaintiff still had to control his arms and legs from any abrupt movement. J. Ariedeel Did NOT INTEND to inflict additional, extreme pain, on the Plaintiff, but her negligent actions CAUSED the Plaintiff's additional, extreme pain, for a significant period of time. The Plaintiff accepts the rest of the statement as true.

35. "Yelling continued." The Plaintiff accepts the rest of the statement as true.

36. "BG = 129." The Plaintiff accepts the rest of the statement as true.

37. "Skin read, warm, dry. Pt continued yelling but would stop to answer questions." The Plaintiff accepts the rest of the statement as true.

38. "Pt able to wipe own face, maintain airway, coughing." The Plaintiff

accepts the rest of the statement as true.

39. "Will not tolerate EKG. Slurred speech facial drop." The Plaintiff accepts the rest of the statement as true.

40. "Pt limited due to pt "fear." Pt denies other complaint." The plaintiff accepts the rest of the statement as true.

41. "States "pelvic floor tightness" and front head pain x 2.5 mts, right arm pain when BP being done." The Plaintiff accepts the rest of the statement as true.

42. "States would [feel] better w/pelvic massage." The Plaintiff accepts the rest of the statement as true. The standard effective treatment is trigger point release, something a NYS certified massage thereapist could do for $70 an hour. Alternatively, muscle/bone physical therapist can do this for $100 an hour, one to two hours of treatment needed."

43. "Continues answering questions in between yelling, moans, etc." The Plaintiff accepts the rest of the statement as true.
***

(Emphasis in original.)

The amended complaint also states (Dkt. No. 11, pp.1-2, 5):

... [T]his was the third time that employee's of the Town of Colonie responded to the Plaintiff in this situation. The first two where supervised ultimately by the Town of Colonie Police Officer Whitelaw. The Court will find that Officer Whitelaw is extremely competent in New York State Mental Hygiene Law 9.41 (herein 9.41), in both its procedural application, and the sprit behind the 9.41.

On the first time the Plaintiff was involved with Officer Whitelaw she responded to a similar situating in a public place. Officer Whitelaw kept stating that the Plaintiff did the exact right thing. The following is the Plaintiffs understanding of Officer Whitelaw's instructions and the reasons for them.

Do to the unique nature of the Plaintiff condition the Plaintiff should first do what he can to get away from civilian's, and empty room is ideal. Getting away from civilians makes it a lot easier for the police/EMT's to communicate with the Plaintiff, without concern for civilians, only trained professions would be around the Plaintiff.

Officer Whitelaw advised the Plaintiff to lay face down on the floor, with the Plaintiff's hand's visitable, and for the Plaintiff not to make any sudden movements. In an extension of this the Plaintiff was advised by some police officer that the Plaintiff cannot recall, to not have the Plaintiff's arms and legs through about, despite the extreme pain the Plaintiff would be in. The Plaintiff was advised lying on the ground in the fetal position, face down on the ground, etc. was fine. However, if the Plaintiffs arms or legs started swinging around, due to the extreme pain the Plaintiff was in, then corrective action would be taken, handcuffed, tied down to a stretcher, inject with drugs (such as Haldol), etc. The understanding was that while the police understood that the Plaintiff would be in extreme pain, and while the Plaintiff was not intending to harm someone, having the Plaintiff's arms and legs swinging about, due to the extreme pain the Plaintiff would be in, would not be tolerated because the Plaintiff could unintentionally harm another person. Therefore, as long as the Plaintiff controlled his arms and legs, was on the ground in the fetal/face down on the floor, the Plaintiff could keep control of his person. However, if the Plaintiff started uncontrollable fling his arms and legs around, then the Plaintiff would lose control of his person, and the police/medical personnel, would take control of the situation and the Plaintiff would be taken into custody. The reason for the Plaintiff lying on the floor, face down, with the Plaintiff's hand visible, like a criminal, is so the Police to not think that the Plaintiff was a danger to himself or others.
\*\*\*

... If the Court ever hears testimony from Office Whitelaw the Court will find her absolute competency and her sincere wish for the Plaintiff to NOT be kept in pain....
\*\*\*

**For the record, the Plaintiff is stating that it is the Town of Colonies' policy or custom to NOT TRAIN their EMT's in that the EMT's MUST FIRST need to receive 9.41 paperwork from a police officer, BEFORE the EMT's can order a patient onto a stretcher and brought to a medical facility against the patient's will.  It was a direct result of this failure to train The Town of Colonie EMT's in this that resulted in the Plaintiff's injuries from the order's given by Defendant J. ARIEDEEL, AEMT**.
\*\*\*

(Emphasis in original.)

The amended complaint asserts 45 causes of action.  There are two causes of action designated "Count 42"; the Court refers to the first as Count 42(1), and the second as Count 42(2).  Plaintiff seeks an order directing the Town of Colonie ("Town") to provide proper training

to its emergency medical technicians ("EMTs"), money damages in the amount of $500,000 for

pain and suffering, and other relief.

Among the attachments to the amended complaint is the CEMS report prepared by

Ariedeel with the following narrative of the events on January 9, 2011, up to the time plaintiff

was placed in the ambulance:

> Upon EMS arrival plaintiff lying face down semiclothed on floor of airport
> surrounded by multiple sheriff deputies & airport fire personnel. Airport Fire
> states pt has been on the floor ~30+ min & sheriff states pt initially walked to
> Southwest ticket counter then to Security, then stated "groin pain", acquired
> wheelchair, went to lower floor & laid on the floor. State pt was semi clothed
> upon arrival at security, in tshirt, loose shorts only. State pt lying on floor
> repeatedly stabbing himself with his keys, asking for a pen to stab himself
> with in apparent attempt to relieve "groin pain". Pt also presented Sheriff w/
> multiple copies of statement documenting "severe anxiety manifested as
> testicular pain", see attached.[2] Documents also state that pt has fear of
> "male medical professionals". Assess: pt lying prone on floor, yelling
> incoherently, loudly. Hands under body moving at groin area. Pt able to
> answer questions when asked. Airway patent, adequate breathing, no obvious
> bleeding. Plaintiff very angry, insists has "pelvic floor tightness" & is
> stabbing self at "tension release points". Denies other medical complaints.
> After short discussion, pt moved self to sitting upright position. Refused to
> get onto stretcher, rolled to LBB, secured with seatbelts & moved stretcher to
> amb. Yelling continued.

Also attached to the amended complaint is the following memo "To Whom it May

Concern" dated July 20, 2011, signed by Kathleen Zabinski, MD of Albany Medical College:

> Russell Vanbrocklen is a patient of mine who suffers from severe panic
> attacks which trigger severe testicular pain from PTSD. When this occurs, it
> causes him to have severe pain, yell and become very panic stricken. It is
> worsened by being approached and touched by any male. If this occurs, he
> should be given a pointed object ... such as a pen, to which he can try to stab
> himself in certain pressure points to relieve the pain. If this fails, a cab should
> be called to transport him to a massage therapist, who can use certain
> techniques to relieve the pain. He is not a danger to himself or others when

---

[2] This document is not in the record.

these events occur.

## APPLICABLE LAW – MOTION TO DISMISS

To survive a dismissal motion, "a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in plaintiff's favor. *See ATSI*, 493 F.3d at 98.

A complaint should be "especially liberally construed when it is submitted *pro se* and alleges civil rights violations." *See Jacobs v. Mostow*, 271 Fed.Appx. 85, 87 (2d Cir. 2008) (citing *Fernandez v. Chertoff*, 471 F.3d 45, 51 (2d Cir. 2006)). In addressing a motion to dismiss a *pro se* plaintiff's complaint, a court may properly consider additional materials submitted by plaintiff outside the complaint. *See, e.g., Johnson v. Wright*, 234 F.Supp.2d 352, 356 (S.D.N.Y. 2002) (deeming the factual allegations in *pro se* plaintiff's briefs to supplement his pleading). The submissions of a *pro se* litigant should be interpreted to raise the strongest arguments that they suggest. *See Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

## PLAINTIFF'S MOTION

First, the Court addresses plaintiff's motion (Dkt. No. 17) for leave to submit additional information in opposition to defendants' dismissal motion. Plaintiff asks the Court to delay decision on the dismissal motion until he can submit the transcripts of depositions he took of two EMTs in another case. According to plaintiff, the EMTs testified regarding the requirements of

section 9.41 of New York's Mental Hygiene Law and the manner in which an EMT should deal

with a "a person with a mental disorder, that was conscious, aware of person, place, etc." Even

assuming that the testimony in these two depositions is as plaintiff represents it to be, it would

have no bearing on the Court's decision on defendants' dismissal motion. It is for the Court to

determine the requirements of the law and to consider the amended complaint in light of those

requirements. Therefore, the Court denies the motion (Dkt. No. 17). As for the 14-page

memorandum plaintiff submits in support of his motion, the Court treats it as a surreply to

defendants' dismissal motion.

As a result, the record contains the following submissions from plaintiff, many of which

are single-spaced: his ten-page complaint plus attachments (Dkt. No. 1); his three-page response

to defendants' first dismissal motion, plus attachments (Dkt. No. 10); his 47-page amended

complaint plus attachments (Dkt. No. 11); his four-page letter-motion plus attachments (Dkt. No.

12); his two-page letter-motion (Dkt. No. 14); his 72-page opposition to the currently-pending

dismissal motion, plus attachments (Dkt. No. 15); his 14-page memorandum on the motion for

leave to submit further information (Dkt. No. 17); and his four-page letter (Dkt. No. 19).

## DEFENDANTS' MOTION

The Court now turns to defendants' motion (Dkt. No. 13) to dismiss the amended

complaint. In view of plaintiff's *pro se* status, the Court considers all the materials he has

submitted, as listed above. The Court assumes the truth of all of plaintiff's factual assertions and

interprets his submissions most liberally to raise the strongest arguments that they suggest. In

evaluating plaintiff's section 1983 claims, the Court assumes, without deciding, that defendant

Ariedeel was acting under color of state law. As explained below, the Court grants defendants'

motion and dismisses the amended complaint.  All federal claims – counts 12, 13, 14, 27, 28, 36, 37, 38, 39, and 42(2) – are dismissed with prejudice; all state-law claims – counts one through 11, 15 through 26, 29 through 35, 40 through 42(1), 43, and 44 – are dismissed without prejudice; and the case is closed.

**Section 1983 – Fourth Amendment**

The Court first considers plaintiff's section 1983 claim that defendants violated his Fourth Amendment protection against unreasonable seizure of his person.  The seizure of a person for the purpose of involuntary transport for medical or psychiatric evaluation or treatment "may be made only upon probable cause, that is, only if there are reasonable grounds for believing that the person seized is dangerous to [him]self or to others." *Anthony v. City of N.Y.*, 339 F.3d 129, 137 (2d Cir. 2003) (internal quotation marks and citations omitted); *accord Green v. City of N.Y.*, 465 F.3d 65, 83 (2d Cir. 2006); *Glass v. Mayas*, 984 F.2d 55, 58 (2d Cir. 1993); *Monday v. Oullette*, 118 F.3d 1099, 1102 (6th Cir. 1997); *Eze v. City Univ. of N.Y.*, 2011 WL 6780652, *5 (E.D.N.Y. Dec. 27, 2011).  Refusal to accept medical treatment, without more, does not constitute danger to oneself.  *See Green*, 465 F.3d at 83.

Here, based on plaintiff's factual allegations, which are fully consistent with the reports by airport personnel and CEMS (with the single exception that plaintiff disputes Ariedeel's statement that plaintiff was "very angry"), the Court holds that there was no Fourth Amendment violation as a matter of law.  When Ariedeel decided to place plaintiff on the stretcher and transport him against his will, she had reasonable grounds to believe plaintiff was a danger to himself.  Plaintiff had been lying on the floor for more than 50 minutes, yelling loudly and incoherently, complaining of severe pain, repeatedly stabbing himself in the groin with his car

keys, and asking for a pen to stab himself with. Ariedeel observed plaintiff for more than 20 minutes of this period. Plaintiff's conduct provided reasonable grounds to believe that, if allowed to continue, he would injure himself.

At the scene, before CEMS arrived, plaintiff presented to sheriff's department employees a document from Albany Medical College. The document is not in the record, but according to the CEMS report, it stated that plaintiff suffers from "severe anxiety manifested as testicular pain" and fear of "male medical professionals." (Plaintiff does not dispute this aspect of the CEMS report.) Assuming that its contents were as reported, this document did not provide an explanation of plaintiff's condition sufficient to alleviate a reasonable concern that he would injure himself during the January 9, 2011 incident.[3]

Plaintiff contends that, before an EMT can order a patient onto a stretcher and brought to a medical center against his will, the EMT must first obtain from a police officer the "paperwork" described in section 9.41 of the New York Mental Hygiene Law. This argument lacks merit. Even accepting plaintiff's interpretation of the applicability and requirements of section 9.41, a violation of state law does not, without more, give rise to a section 1983 claim. To make out a Fourth Amendment claim, it is not enough to plead that Ariedeel did not follow state law. Rather, plaintiff must plead enough facts to state a plausible claim that Ariedeel seized his person without probable cause, that is, without reasonable grounds to believe that plaintiff was dangerous to

_____

[3] The record contains a letter from Dr. Zabinski explaining plaintiff's condition and concluding that he "is not a danger to himself or others when these events occur." This letter is dated July 20, 2011, six months after the events in issue.

Even if plaintiff had presented a document such as Dr. Zabinski's letter, it might not have alleviated a reasonable concern that plaintiff would injure himself on the day in question, given the nature and duration of his conduct. Indeed, the record suggests that the January 9, 2011 episode was not typical of plaintiff's condition; plaintiff reportedly told airport personnel that, although applying pressure to the area usually decreased the pain, there was "no relief today."

-12-

himself or others.  Plaintiff's submissions fail to meet this requirement.  Counts 12, 36, and 37 are

dismissed with prejudice.

**Qualified immunity**

For the same reasons, it was objectively reasonable for Ariedeel to believe that plaintiff

presented a danger to himself and that therefore placing him on a stretcher and transporting him

against his will was consistent with his Fourth Amendment rights.  As such, even if there was a

Fourth Amendment violation, Ariedeel is protected from Fourth Amendment liability by the

doctrine of qualified immunity.  *See Glass*, 984 F.2d at 58.  Thus, Count 36, the Fourth

Amendment claim against Ariedeel, is dismissed with prejudice on this ground as well.

**Section 1983 – Fourteenth Amendment**

It is well established that, under the Due Process Clause of the Fourteenth Amendment, a

competent person has a liberty interest in refusing unwanted medical treatment.  *See Cruzan v.

Director, Missouri Dept. of Health*, 497 U.S. 261, 278 (1990).  This liberty interest does not

extend to refusing to be transported for treatment.  *See Green*, 465 F.3d at 85.  In affirming the

dismissal of a Fourteenth Amendment claim against a city employee who directed a patient's

removal from his home and transport to the hospital, the *Green* court stated: "We do not believe

that the mere act of transporting a person to the hospital constitutes treatment.  Rather, this action

is more properly considered as a seizure under the rubric of the Fourth Amendment."  *Id.*  The

*Green* court noted that there was no evidence that the patient objected to the treatment he

eventually received in the hospital; rather, he objected only to being taken to the hospital.  *See id*.

The same reasoning applies to plaintiff's claims under the Fourteenth Amendment in the

case at bar.  Plaintiff does not complain of the treatment he received at the Albany Medical Center

-13-

Hospital Emergency Department.  Rather, he complains that he was placed on a stretcher and

transported to the hospital against his will.  This claim is properly viewed as alleging a seizure

under the Fourth Amendment, not a due process violation.  Construing plaintiff's Fourteenth

Amendment claims as alleging improper seizure of his person, the Court dismisses them on the

same grounds as it dismissed his Fourth Amendment claims.  Counts 13, 14, 38, and 39 are

dismissed with prejudice.

**Section 1983 - Federally secured rights**

Plaintiff does not specify any ground for his section 1983 claims except the Fourth and

Fourteenth Amendments, nor does the Court's review suggest any other ground.  Counts 27 and

28 are dismissed with prejudice.

**Direct Constitutional Claims**

In addition to his section 1983 causes of action based on the Fourth and Fourteenth

Amendments, plaintiff pleads direct Fourth and Fourteenth Amendment claims against both

defendants.  It is well established that, where a remedy exists under section 1983, "an implied

cause of action grounded on the Constitution is not available."  *Pauk v. Board of Trustees of City

Univ. of N.Y.*, 654 F.2d 856, 865 (2d Cir.1981); *accord Turpin v Mailet*, 591 F.2d 426, 427

(1979).  Because a remedy exists under section 1983 for the type of constitutional violations

alleged by plaintiff, his direct claims under the United States Constitution cannot stand.  Causes

of action 36, 37, 38, and 39 are dismissed with prejudice on this ground.

**Municipal Liability**

The Court has rejected plaintiff's claims that Ariedeel violated his constitutional rights.

Therefore, there is no basis to impose section 1983 liability on the municipality for Ariedeel's

conduct.  In any event, the amended complaint does not contain allegations sufficient to support a

plausible claim that the conduct of which plaintiff complains arose from a municipal policy or

practice.  *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694-95 (1978).  Counts 12, 14,

28, 37, and 39 against the Town are dismissed with prejudice on this ground as well.

**Americans with Disabilities Act**

Plaintiff asserts a claim against the Town based on section 12132 of the ADA, which

provides: "[N]o qualified individual with a disability shall, by reason of such disability, be

excluded from participation in or be denied the benefits of the services, programs, or activities of

a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  On this

motion, for the purpose of applying section 12132 to plaintiff's claims, the Court assumes that

plaintiff's condition constitutes a disability within the meaning of the ADA.  Therefore, the

question is whether plaintiff has pleaded a plausible claim that the Town discriminated against

him in the provision of a service, program, or activity due to this disability.  Construed liberally

and in the light most favorable to plaintiff, his allegations fail to state such a claim.

Plaintiff argues that the Town denied him access to a "service, program, or activity" when

Ariedeel made the decision to transport him to the hospital against his will.  He contends that,

instead, she should have utilized the procedure set forth in section 9.41 of the New York Mental

Hygiene Law.[4]  He argues (Dkt. No. 15, pp.71-72):

[4] Section 9.41 of the New York Mental Hygiene Law provides:

> Any peace officer, when acting pursuant to his or her special duties,
> or police officer who is a member of the state police or of an
> authorized police department or force or of a sheriff's department
> may take into custody any person who appears to be mentally ill
> and is conducting himself or herself in a manner which is likely to
> result in serious harm to the person or others. Such officer may
> direct the removal of such person or remove him or her to any

> The violate in the ADA is the Defendant's refusal to allow the Plaintiff access to the Town of Colonies' extreme good 9.41 system (as demonstrated by Officer Whitelaw), because of the Plaintiff's disabilities.
>
> If Office Whitelaw responded to, or directed other Town of Colonie employee's on how to properly handle the Plaintiff, (as she did twice before this date), then Office Whitelaw would have (know that the plaintiff is not a danger to himself or others) an alternative medical device. Officer Whitelaw would have stay pateiently until the Plaintiff resolved his medical condition, and then ASK if the Plaintiff wanted any further medical attention.
>
> Your Honor, this is the third time in two years that Town of Colonie employees have responded to an attack that I had in public. If Officer Whitelaw responds to, or directs of the Town of Colonie employee's to an attack I have in public, then my Constitutional rights, and ADA rights, are fully protected, fallowing the Town of Colonies' well-regarded 9.41 system.
>
> However, it seems that if officer Whitelaw IS NOT INVOLVED in a 9.41 call, then Town of Colonie employee's will disregard the Town of Colonies' well regarded 9.41 system, and the Plaintiff's constitutional rights, and ADA rights, will be violated. Your Honor, there is a good chance that I will have other attacks, in public, in the Town of Colonie again, in the future, I need the Town's well developed system fallowed, not ignored because my disability is time consuming to deal with....

The fact that Ariedeel did not proceed by way of section 9.41 does not support a section 12132 ADA claim. Section 9.41 is a statute – not a service, program, or activity of defendant Town. It establishes a procedure whereby a law enforcement officer may detain a person who appears to be mentally ill and is likely to harm himself or others. It does not abolish or curtail the long-standing common-law privilege to detain a person who poses a danger to himself or others.

---

> hospital specified in subdivision (a) of section 9.39 or any comprehensive psychiatric emergency program specified in subdivision (a) of section 9.40, or, pending his or her examination or admission to any such hospital or program, temporarily detain any such person in another safe and comfortable place, in which event, such officer shall immediately notify the director of community services or, if there be none, the health officer of the city or county of such action.

*See Warner v. State of N.Y.*, 297 N.Y. 395, 401-02 (1948).  An EMT who reasonably believes a person is a danger to himself or others may properly transport that person for evaluation or treatment; there is no requirement that the EMT first summon a police officer to proceed pursuant to section 9.41.

In support of his ADA claim, plaintiff relies on *Green v. City of N.Y.*, 465 F.3d 65, 76-78 (2d Cir. 2006).  In *Green,* the Second Circuit reinstated a claim that defendant city discriminated against a non-verbal patient by denying him access to the municipality's system for evaluating refusals to accept medical assistance.  The *Green* court found a jury question as to whether the basis for the city's failure to use the evaluation system on that occasion was the patient's inability to speak, that is, whether the patient was denied access to the system due to his disability.  Plaintiff's reliance on *Greene* is misplaced.  The requirements of section 9.41 do not constitute a "system" analogous to the system in *Green*; rather, as noted, they establish a procedure for law enforcement officers – not EMTs – to follow when admitting a person who appears to be mentally ill.  Plaintiff appears to claim that, if the Town had proceeded by way of section 9.41, Officer Whitelaw might have become involved and might have handled the incident differently.  Even if this is true, it does not mean that Ariedeel's conduct was discriminatory or deprived plaintiff of the benefit of any municipal service.  Neither plaintiff's disagreement with Ariedeel's actions, nor his belief that Officer Whitelaw would have acted differently, support a plausible ADA claim.  Nor is there anything in the record to suggest that Ariedeel's decision to proceed as she did was based on plaintiff's disability or otherwise discriminatory.  Count 42(2) is dismissed with prejudice.

**State Law Claims**

-17-

Having dismissed all federal-law claims, the Court now considers whether to exercise

jurisdiction over the state-law claims.  Particularly in view of the very early stage of the case, the

Court finds that judicial economy, convenience, fairness, and comity all point toward

relinquishing jurisdiction.  *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988);

*Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 119 (2d Cir. 2006).  Therefore, Counts one

through 11, 15 through 26, 29 through 35, 40 through 42(1), 43, and 44 are dismissed without

prejudice.[5]

**CONCLUSION**

It is therefore

ORDERED that plaintiff's motion (Dkt. No. 17) for leave to submit additional

information in opposition to the dismissal motion is denied; and it is further

ORDERED that defendants' motion (Dkt. No. 13) to dismiss the amended complaint (Dkt.

No. 11) is granted; and it is further

ORDERED that Counts 12, 13, 14, 27, 28, 36, 37, 38, 39, and 42(2) are dismissed with

prejudice; and it is further

ORDERED that Counts one through 11, 15 through 26, 29 through 35, 40 through 42(1),

43, and 44 are dismissed without prejudice; and it is further

ORDERED that the case is closed; and it is further

ORDERED that the Clerk of the Court is directed to serve copies of this Memorandum-

---

[5] Under N.Y.C.P.L.R. 205(a), plaintiff may bring an action in state court based on the same
occurrences, within six months after this dismissal, provided that the new action would have been timely
commenced at the time of commencement of the prior action and that service upon defendants is effected
within the six-month period.  *See George v. JP Morgan Chase Manhattan Bank*, 222 Fed.Appx. 84, 85,
fn** (2d Cir. 2007).

Decision and Order in accordance with the Local Rules of the Northern District of New York.

IT IS SO ORDERED.

Date:    March 26, 2012
         Syracuse, New York

Honorable Norman A. Mordue
U.S. District Judge

-19-